ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| GABRIELA CRISTINA SOSA DAWSON  Peticionaria  v.  RICHARD OMAR DARMANIN SERRANO  Recurrido | TA2025CE00574 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón  Caso Núm.: BY2021RF01766  Sobre: Divorcio-Ruptura Irreparable |

Panel integrado por su presidenta, la Juez Ortiz Flores, el Juez Rivera Torres y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 18 de noviembre de 2025.

Comparece la Sra. Gabriela Cristina Sosa Dawson (señora Sosa Dawson o peticionaria) mediante recurso de *certiorari*. Solicita que revoquemos las órdenes emitidas por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), el 26 de agosto de 2025 y el 17 de septiembre de 2025. A través de los referidos dictámenes, el TPI determinó que eran improcedentes una solicitud de desacato y una solicitud de descorrer el velo corporativo de la corporación Logix, LLC (Logix)[1], y declaró No Ha Lugar una solicitud de reconsideración presentada por la peticionaria, respectivamente.

Por los fundamentos que expondremos a continuación, dejamos sin efecto la paralización de los procedimientos y denegamos expedir el recurso de *certiorari* solicitado.

---

[1] Logix, LLC es una Compañía de Responsabilidad Limitada —número de registro 474217— creada al amparo de la Ley Núm. 164-2009, según enmendada, mejor conocida como la *Ley General de Corporaciones*, cuya Agente Residente, Presidenta, Secretaria, Tesorera, y Persona Autorizada, es la señora Minette Serrano. Para propósitos informativos e ilustrativos, la señora Minette Serrano es alegadamente la madre del recurrido, el señor Darmanin Serrano, y la dueña de la entidad corporativa; Véase, Apéndice de la peticionaria, expediente electrónico del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA), entrada núm. 173.

**I.**

El presente caso tuvo su génesis el 30 de septiembre de 2021, cuando la señora Sosa Dawson presentó una *Demanda* de divorcio por ruptura irreparable contra el Sr. Richard Omar Darmanin Serrano (señor Darmanin Serrano o recurrido).[2] En síntesis, alegó que contrajo matrimonio con el señor Darmanin Serrano el 18 de junio de 2004 bajo el régimen económico de la Sociedad Legal de Bienes Gananciales. Aseveró que procrearon tres (3) hijos durante el matrimonio, todos menores de edad. Por lo tanto, solicitó al TPI la disolución del matrimonio habido entre las partes, la custodia total de los menores, la patria potestad compartida, la designación de la propiedad ganancial como hogar seguro, y la imposición de gastos, costas y honorarios de abogado.

Luego, las partes solicitaron enmendar las alegaciones a los fines de cambiar la causal de divorcio a una petición de divorcio por consentimiento mutuo, y estipular todo lo relacionado a la custodia y patria potestad de los menores, los alimentos, el hogar seguro y la liquidación del caudal ganancial.[3] Posteriormente, el 17 de diciembre de 2021, notificado a las partes el 20 de diciembre de 2021, el TPI emitió una *Sentencia* mediante la cual declaró Ha Lugar la petición de divorcio por consentimiento mutuo.[4] Asimismo, acogió las referidas estipulaciones que ofrecieron las partes.

Así las cosas, el 13 de septiembre de 2023, el señor Darmanin Serrano presentó una *Solicitud de Referido a EPA.*[5] Solicitó que se refiriese el caso ante la Examinadora de Pensiones Alimentarias (EPA), toda vez que alegó la presencia de cambios sustanciales. En

---

[2] Véase, Apéndice de la peticionaria, expediente electrónico del caso en el SUMAC-TA, entrada núm. 1.

[3] Véase, Apéndice de la peticionaria, expediente electrónico del caso en el SUMAC-TA, entradas núm. 25 y 26.

[4] Véase, Apéndice de la peticionaria, expediente electrónico del caso en el SUMAC-TA, entrada núm. 31.

[5] Véase, Apéndice de la peticionaria, expediente electrónico del caso en el SUMAC-TA, entrada núm. 69.

respuesta, la señora Sosa Dawson presentó una *Oposición a "Solicitud de Referido a EPA"*, la cual fue declarada No Ha Lugar por el TPI, quien mantuvo el referido a la EPA.[6]

Superados varios incidentes procesales, el 30 de julio de 2025, la señora Sosa Dawson presentó una *Urgente Moción en Solicitud de Orden a Logix, LLC.*[7] Peticionó al foro recurrido que emitiese una orden a Logix y al contable de la corporación, el Sr. Edgardo Javier Areizaga Soto (señor Areizaga Soto o CPA) a los fines de comparecer a la vista de pensión alimentaria ante la EPA señalada para el 5 de agosto de 2025. Solicitó, además, que produjeran ciertos documentos de Logix, requeridos para propósitos de determinar los ingresos y beneficios del señor Darmanin Serrano como empleado de la referida corporación, so pena de encontrarlos incursos en desacato. Lo antes mencionado, para efectos de determinar la compensación y beneficios que recibe el señor Darmanin Serrano e incluirlos en la fijación de la pensión alimentaria de los menores. El 31 de julio de 2025, el TPI emitió una *Orden* en la que declaró Ha Lugar dicha petición y señaló a la señora Sosa Dawson que procediera a expedir las citaciones.[8]

El 5 de agosto de 2025, se celebró la vista de revisión de pensión alimentaria ante la EPA, en la que comparecieron ambas partes junto a sus respectivas representaciones legales.[9] En lo que nos concierne, también compareció el CPA de Logix, el señor Areizaga Soto. Lo anterior a raíz de la citación expedida. El señor Areizaga Soto declaró en la vista. En síntesis, y a preguntas de la representación

---

[6] Véase, Apéndice de la peticionaria, expediente electrónico del caso en el SUMAC-TA, entradas núm. 74 y 77.

[7] Véase, Apéndice de la peticionaria, expediente electrónico del caso en el SUMAC-TA, entrada núm. 273.

[8] Véase, Apéndice de la peticionaria, expediente electrónico del caso en el SUMAC-TA, entrada núm. 274.

[9] Véase, Apéndice de la peticionaria, expediente electrónico del caso en el SUMAC-TA, entrada núm. 280.

legal de la señora Sosa Dawson y el señor Darmanin Serrano, realizó las siguientes expresiones:

1. Es el CPA de la corporación Logix.

2. Compareció como CPA de Logix, no como representante de la corporación.

3. En la vista ante la EPA de 13 de febrero de 2025, llevó ciertos documentos de la corporación, entre ellos, historial de pago de teléfono de Logix, la W-2 del año 2023, W-2 del año 2024, y el *income statement* del año 2024.

4. Para la vista del 13 de febrero de 2025, preparó un análisis para el término del 1 de enero 2023 al 30 de junio de 2024. Incluía datos como, salario, servicios profesionales, tiempo extra, bonos, comisiones, entre otros. Para la vista del 8 de agosto de 2025, preparó otro análisis, pero el señor Darmanin Serrano le indicó que no los llevara a la vista.

5. El análisis preparado era sobre gastos de teléfono celular e internet, auto y gasolina, utilidades, y pago de renta de oficina.

6. Hubo gastos de viaje identificados como gastos de negocio.

7. Que el 4 de agosto de 2025, realizó una declaración jurada para propósitos de ser presentada en la vista ante la EPA el 5 de agosto de 2025.

8. Aseveró nunca haber preparado estados financieros para Logix de enero de 2022 a junio de 2025.

9. Expresó que no tenía conocimiento sobre la citación de Logix a la vista de febrero de 2025.

10. A preguntas de la representación legal de la señora Sosa Dawson, aseveró además que desconocía sobre la solicitud que hizo la representante legal de Logix para que el TPI eximiera a Minette Serrano de comparecer a la vista ante la EPA señalada para el 5 de agosto de 2025.

11. Expresó que no trajo ningún documento pues se le indicó que no trajera documentos de la corporación a la vista.

12. Señaló que no conoce a Minette Serrano.

13. Indicó que el señor Darmanin Serrano no ocupa posiciones de oficial en Logix.

14. Los análisis que preparó consistían en buscar en la contabilidad de Logix detalles de cuentas e identificar balances de cuentas, sumarlas y sacar el porciento de gastos personales. Lo anterior para el año 2024.

15. Aseveró que no hace trabajos de auditoría para la corporación.

16. No hizo tipo de contratación para el trabajo realizado con respecto a la vista.

17. Hace la contabilidad de acuerdo con lo que dice el señor Darmanin Serrano.

18. Las partidas sobre las que habló las determinó el señor Darmanin Serrano.

19. El señor Darmanin Serrano le da mensualmente estados de cuenta de banco de Logix con documentos donde se detallan los gastos.

20. Tiene los documentos anteriormente mencionados correspondientes a los años 2023 y 2024.

21. A preguntas de la representación legal del señor Darmanin Serrano, señaló que los datos de las partidas antes discutidas los plasmó en declaración jurada. Puntualizó que se sostiene en lo expresado en la declaración jurada.

22. A preguntas de la representación legal de la señora Sosa Dawson, dijo que no examinó otros documentos para sostenerse en esos números.[10]

Luego, el 11 de agosto de 2025, la señora Sosa Dawson presentó una *Moción en Solicitud de Desacato a Logix, LLC y al Lcdo. Edgardo J. Areizaga, CPA; Solicitud de Sanciones y Descorrer el Velo Corporativo.*[11] En suma, adujo que el testimonio del CPA demostró que es el señor Darmanin Serrano el verdadero dueño de Logix y no la señora Minette Serrano. Por lo tanto, dado que Logix no compareció a la vista ante la EPA, y el señor Areizaga Soto no llevó los documentos requeridos por instrucciones del señor Darmanin Serrano, solicitó al TPI que impusiera sanciones económicas a este último.

Asimismo, por lo antes expuesto, peticionó al foro recurrido que citase a la señora Minette Serrano y al señor Areizaga Soto para que mostrasen causa por la cual no debían ser encontrados incursos en desacato. También, solicitó al foro de instancia que determinase que el CPA demostró con sus declaraciones que el señor Darmanin Serrano es el verdadero dueño de Logix y autorizara a descorrer el velo corporativo para efectos del cómputo de la pensión alimentaria de los menores. Igualmente, requirió al TPI lo siguiente:

Ordene al peticionario Darmanin y a Logix, LLC producir copia de todos los estados bancarios de cuentas corporativas para el periodo de [1] de enero de 2023 al presente[,] así como el mayor general que incluya todas las transacciones de los años 2023, 2024 y los meses transcurridos del año 2025.[12]

El 13 de agosto de 2025, la EPA presentó su *Informe de la Examinadora de Pensiones Alimentarias,* en el que relató lo acaecido

---

[10] Grabación de la vista ante la EPA de 5 de agosto de 2025, 48:26.
[11] Véase, Apéndice de la peticionaria, expediente electrónico del caso en el SUMAC-TA, entrada núm. 281.
[12] *Id.*

en la vista.[13] Recomendó que, conforme a los cálculos realizados por ésta y considerando que existe una custodia compartida, se estableciera una pensión alimentaria provisional de $372.78 mensuales a ser pagada por el señor Darmanin Serrano directamente a la señora Sosa Dawson. Con respecto al testimonio del CPA de Logix y la incomparecencia de la corporación, estableció lo siguiente:

A. Testigo CPA, licencia 2861 y abogado, número de RUA 14012.

B. Contador de la Corporación Logix.

C. Declaró que realizó un análisis de los gastos personales del señor Darmanin que paga la corporación Logix:
    a. Renta de oficina- $12,000.00 (50 %)
    b. Utilidades (agua y luz)- $ 1,086.00 (50 %)
    c. Auto y gasolina- $ 1,794.00 (20 %)
    d. Celular e internet- + $ 1,837.00 (20 %)
    Total anual 2024 - $16,717.00
    $16,717.00 ÷ 12 meses = $1,393.08 – beneficios mensuales recibidos por el señor Darmanin.

D. El testigo, a preguntas de la Lcda. Mora, declaró que no trajo los documentos ni el análisis realizado porque el señor Darmanin le dijo "que no lo trajera"; que no trajera ningún documento relacionado con la corporación.

E. El testigo no ha preparado estados financieros al señor Darmanin.

F. El señor Areizaga declaró que no encontró "nada" en los documentos de la corporación relacionados con: vacaciones, enfermedad, planes de retiro, gastos escolares, gastos personales o pagos a terceros del señor Darmanin.

G. El testigo expresó que se mantenía en lo declarado en la Declaración jurada presentada, con fecha del 4 de agosto de 2025.

H. El señor Areizaga declaró que el señor Darmanin no es oficial de Logix.

La corporación Logix no compareció en respuesta a la orden dictada por la jueza.

El señor Darmanin declaró que le dijo al señor Areizaga que no podía llevar al Tribunal los documentos de la corporación.[14]

La vista del caso quedó reseñalada para el 9 de octubre de 2025, pero posteriormente quedó sin efecto.[15] Las recomendaciones realizadas por la EPA fueron acogidas por el foro recurrido mediante *Resolución y Orden Provisional de Alimentos*

---

[13] Véase, Apéndice de la peticionaria, expediente electrónico del caso en el SUMAC-TA, entrada núm. 283.
[14] *Id.*
[15] Véase, Apéndice de la peticionaria, expediente electrónico del caso en el SUMAC-TA, entrada núm. 295.

emitida el 14 de agosto de 2025.[16] Después, el 25 de agosto de 2025, el señor Darmanin Sosa presentó una moción en oposición a la solicitud de desacato y de descorrer el velo corporativo radicada por la señora Sosa Dawson.[17]

En resumen, alegó que, aunque la citación de Logix fue enviada por correo electrónico, nunca fue diligenciada conforme a la Regla 40.3 de Procedimiento Civil. Aseveró que, a diferencia del señor Areizaga Soto que fue citado en corte abierta, Logix no fue debidamente citada. Con respecto al CPA, expresó que presentó una declaración jurada en la vista con los beneficios que recibe el señor Darmanin Serrano. Con relación al argumento esgrimido por la señora Sosa Dawson de descorrer el velo corporativo, arguyó que la señora Sosa Dawson intenta llevar a cabo una expedición de pesca e inducir a error al TPI. Así, solicitó que sancionase a la señora Sosa Dawson.

El 26 de agosto de 2025, el TPI emitió una *Orden* en la que declaró Ha Lugar la moción en oposición del señor Darmanin Serrano, y declaró improcedente la solicitud de desacato y de descorrer el velo corporativo de la señora Sosa Dawson.[18] El 10 de septiembre de 2025, la señora Sosa Dawson presentó una solicitud de reconsideración, la cual fue declarada No Ha Lugar por el foro recurrido.[19]

Inconforme, la señora Sosa Dawson acudió ante nos y señaló la comisión de los siguientes errores:

> ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN AL DETERMINAR QUE NO PROCEDE ENCONTRAR INCURSO EN DESACATO A LOGIX, LLC POR SU INCOMPARECENCIA A LA VISTA DEL 5 DE AGOSTO DE 2025 Y POR NO CUMPLIR CON LA ENTREGA DE LOS

---

[16] Véase, Apéndice de la peticionaria, expediente electrónico del caso en el SUMAC-TA, entrada núm. 284.
[17] Véase, Apéndice de la peticionaria, expediente electrónico del caso en el SUMAC-TA, entrada núm. 285.
[18] Véase, Apéndice de la peticionaria, expediente electrónico del caso en el SUMAC-TA, entrada núm. 286.
[19] Véase, Apéndice de la peticionaria, expediente electrónico del caso en el SUMAC-TA, entradas núm. 289 y 290.

DOCUMENTOS REQUERIDOS DESDE EL 25 DE MARZO DE 2024, ASÍ COMO AL NO ORDENAR SU ENTREGA NI IMPONERLE NINGÚN TIPO DE SANCIÓN.

ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN AL DETERMINAR QUE NO PROCEDE ENCONTRAR INCURSO EN DESACATO AL SEÑOR EDGARDO J. AREIZAGA POR SU INCUMPLIMIENTO CON LA ENTREGA DE LOS DOCUMENTOS REQUERIDOS MEDIANTE CITACIONES DILIGENCIADAS EL 27 DE ENERO DE 2025 Y 1RO. DE AGOSTO DE 2025, NO ORDENAR LA ENTREGA DE LOS DOCUMENTOS Y NO IMPONER NINGÚN TIPO DE SANCIÓN.

ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN AL IGNORAR LOS REMEDIOS SOLICITADOS POR LA PETICIONARIA Y NO IMPONER NINGUNA SANCIÓN NI REMEDIO ANTE LA OCULTACIÓN DE EVIDENCIA POR PARTE DEL RECURRIDO Y SU INTERFERENCIA CON UN TESTIGO CITADO AL TRIBUNAL, CONFORME SURGIÓ DEL TESTIMONIO DEL SEÑOR EDGARDO J. AREIZAGA.

ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN AL NEGARSE A ATENDER LOS RECLAMOS DE LA PETICIONARIA EN TORNO A LOS DOCUMENTOS SOLICITADOS AL RECURRIDO, A LOGIX, LLC Y AL SEÑOR EDGARDO J. AREIZAGA ASÍ COMO SOBRE LA CITACIÓN DE TESTIGOS, LO QUE TUVO EL EFECTO PRÁCTICO DE DESESTIMAR SU RECLAMO Y VIOLAR SU DERECHO A UN DEBIDO PROCEDIMIENTO DE LEY.

ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN AL DETERMINAR QUE NO PROCEDE DESCORRER EL VELO CORPORATIVO A LOGIX, LLC, IGNORANDO EL TESTIMONIO DEL SEÑOR EDGARDO J. AREIZAGA, Y SIN LA PREVIA CELEBRACIÓN DE VISTA.

El 20 de octubre de 2025, el señor Darmanin Serrano presentó su *Oposición a Recurso de Certiorari*. Con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

## II.

## A.

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones judiciales de un foro inferior y corregir algún error cometido por éste. *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al., v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334 (2005). A diferencia de la apelación, **el foro revisor tiene**

**la facultad para expedir o denegar el recurso de *certiorari* de manera discrecional**. *García v. Padró, supra.* El Tribunal Supremo de Puerto Rico ha definido *discreción* como el "poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *Id.*, citando a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). Por ende, la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera..." *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964), citado con aprobación en *García v. Padró, supra*, págs. 334-335.

No obstante, el ejercicio de la discreción no equivale a hacer abstracción del resto del Derecho, ya que ese proceder constituiría, en sí mismo, un abuso de discreción. *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). Por lo tanto, el examen al auto discrecional que realizamos antes de decidir el curso a seguir no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra*, pág. 176. Ello así, porque "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". *García v. Padró, supra*, pág. 335; *Pueblo v. Ortega Santiago, supra.*

Es sabido que la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita taxativamente las instancias en las cuales este foro intermedio tiene autoridad para atender los recursos de *certiorari*. En su parte pertinente, la norma dispone que, por excepción, estamos autorizados a expedir un recurso de *certiorari* en los **casos de relaciones de familia**. *Id.* Añade la norma procesal que, "[a]l denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión". *Id.*

Además del examen objetivo antes descrito, para ejercer sabia y prudentemente nuestra facultad discrecional al determinar si expedimos o denegamos un recurso de *certiorari,* nos guiamos por la

Regla 40, *Criterios para la expedición del auto de certiorari*, del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62-63, 215 DPR __ (2025).

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. (Énfasis nuestro).

Claro está, es norma asentada que este tribunal intermedio no interviene con las determinaciones emitidas por el foro primario **ni sustituye su criterio discrecional**, "*salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto*". (Bastardillas en el original). (Énfasis nuestro). *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018).

**B.**

La doctrina de descorrer el velo corporativo se utiliza en aquellas situaciones en las que "existe una corporación organizada debidamente, pero por razones de política pública, el ordenamiento le niega a sus accionistas el beneficio de la responsabilidad limitada". C.E. Díaz Olivo, *Corporaciones: Tratado sobre derecho corporativo*, 2da ed. Rev., Colombia, Ed. AlmaForte, 2018, pág. 117. Esta doctrina tiene como consecuencia la suspensión de la exención de responsabilidad que usualmente acompaña a los accionistas de una

corporación, con relación a las deudas de la entidad para hacerles responsables por ellas. *Id.* En esencia, "es un mecanismo de control que cierra el paso al abuso y utilización impropia de la figura corporativa". *Id.*, pág. 118.

Una corporación tiene personalidad jurídica propia y su propio patrimonio, separados de la personalidad y patrimonio de sus accionistas. *Id.*, pág. 119. Como consecuencia, la responsabilidad de los accionistas por las deudas y obligaciones de la entidad corporativa se limita al capital que estos aporten al patrimonio de la corporación. *Id.* En ese sentido, **no procede invocar la doctrina de descorrer el velo corporativo para derrotar el propósito del concepto corporativo**. (Énfasis nuestro). *Id.*

El profesor Carlos Díaz Olivo explica de manera puntual los principios cardinales en la aplicación de la doctrina en cuestión:

1. La aplicación de la doctrina depende de los hechos específicos de cada caso;

2. El ignorar la entidad corporativa constituye la excepción a la regla;

3. La corporación posee una personalidad jurídica separada y distinta de sus accionistas y la regla general es al efecto de que la existencia de la corporación, independientemente de sus accionistas no puede ser ignorada o descartadas;

4. El fracaso de la corporación en su gestión económica, su administración deficiente, y la falla en observar las formalidades corporativas, no son por sí mismos, razón suficiente para desconocer la entidad;

5. El mero hecho de que una persona sea el único accionista de una corporación no conlleva de por sí la imposición de responsabilidad individual;

6. El peso de la prueba recae sobre la parte que busca descorrer el velo y propone la imposición de responsabilidad individual a los accionistas;

7. **El peso de la prueba no se descarga con la mera alegación de que la empresa es un alter ego de los accionistas**;

8. La prueba del que solicita el desconocimiento **debe ser prueba fuerte y robusta;**

9. Corresponde a la parte que propone el levantamiento del velo presentar prueba que demuestre que:

(i) existe tal identidad de interés y propiedad, que la corporación y la persona de sus accionistas se hallen confundidas; y

(ii) que los hechos sean de tal naturaleza que el sostener la ficción de la corporación derrota la política pública por

> equivaler a sancionar la utilización de la corporación para perpetuar un fraude o promover una injusticia o ilegalidad.
>
> A estos dos elementos, suele añadirse un tercero. Este es que exista una relación causal entre el incumplimiento de la obligación corporativa y el uso por parte de los accionistas de la corporación como un instrumento para la comisión del fraude o ilegalidad. *Id.*, págs. 120-121.

**III.**

En la causa presente, la peticionaria alega que el TPI incidió y abusó de su discreción: 1) al determinar que no procedía encontrar incurso en desacato a Logix por no comparecer a la vista ante la EPA el 5 de agosto de 2025; 2) al determinar que no procedía encontrar incurso en desacato al señor Areizaga Soto, CPA de Logix, por no llevar los documentos solicitados en la citación; 3) al no imponer ninguna sanción ante una alegada ocultación de evidencia y presunta interferencia con un testigo por parte del recurrido; 4) al negarse a atender los reclamos de la peticionaria con respecto a los documentos solicitados; y 5) al determinar que no procede descorrer el velo corporativo de Logix.

Si bien el asunto planteado en esta causa está contenido en las materias que consigna la Regla 52.1 de Procedimiento Civil, *supra*, ya que se trata de un asunto de familia, opinamos que las contenciones de la peticionaria no se ajustan a ninguno de los criterios de la Regla 40 de nuestro Reglamento. Es norma reiterada que los Tribunales de Primera Instancia tienen una gran discreción en el manejo de los procedimientos celebrados en sus salas. Además, la solicitud de descorrer el velo corporativo realizada por la peticionaria no cumple con los requisitos esbozados precedentemente.

Los planteamientos esgrimidos por la peticionaria no nos motivan a intervenir con las determinaciones judiciales impugnadas. Por lo tanto, no advertimos que el curso decisorio tomado por el foro recurrido esté revestido de prejuicio o parcialidad, o haya constituido un craso abuso de su discreción o un error manifiesto.

**IV.**

Por los fundamentos antes expuestos, dejamos sin efecto la paralización de los procedimientos y denegamos expedir el recurso de *certiorari* solicitado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones